## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MICHELLE HEET, DAVID KITCHELL, MIKE BICKLE, and FRANK LUKETICH, individually, and as Representatives of a Class of Participants and Beneficiaries of the Fresenius Medical Care North America 401(k) Savings Plan, <br><br> *Plaintiffs*, <br><br> v. <br><br> NATIONAL MEDICAL CARE, INC. d/b/a FRESENIUS MEDICAL CARE NORTH AMERICA, BOARD OF DIRECTORS OF FRESENIUS MEDICAL CARE NORTH AMERICA, and ADMINISTRATIVE COMMITTEE OF 401(K) SAVINGS PLAN, <br><br> *Defendants*. | Case No. 25-cv-11644-WGY |

## REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 1

I.   The Opposition Affirms That Plaintiffs' Overarching Theory Is Not Actionable ................................................................................................... 1

    A.   Plaintiffs' Theory Is Premised On An Implausible Interpretation Of The Plan ............................................................................. 1

    B.   Plaintiffs' Opposition Barely Acknowledges The Well-Settled Regulatory Framework Permitting FMCNA's Use Of Forfeitures ........... 4

    C.   The Overwhelming Weight Of Authority Has Rejected Plaintiffs' Theory .............................................................................. 5

II.   The Opposition Cannot Save Any Of Plaintiffs' Six Specific Claims .................. 7

    A.   Claim I Depends On A Facially Implausible Interpretation Of The Plan ....................................................................................... 7

    B.   Plaintiffs' Claims For Breach Of The Duty Of Loyalty And Prudence (Claims II-III) Must Be Dismissed ........................................... 7

       1.   Plaintiffs Do Not Challenge Fiduciary Conduct ........................... 7

       2.   Plaintiffs' Breach Of Loyalty Claim Has No Basis In Law ........... 8

       3.   Plaintiffs' Breach Of The Duty Of Prudence Claim Fares No Better ................................................................................ 9

    C.   The Opposition Does Not Meaningfully Contest That FMCNA's Use Of Forfeitures Is Neither A "Transaction" Nor Is It Prohibited ......... 9

    D.   Plaintiffs Concede Their Duty To Monitor Claim Is Purely Derivative ................................................................................. 10

CONCLUSION............................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Abraham v. Exxon Corp.*,
  85 F.3d 1126 (5th Cir. 1996) ..................................................................................4

*Armenta v. WillScot Mobile Mini Holdings Corp.*,
  2025 WL 2645518 (D. Ariz. Sep. 15, 2025).......................................................1, 5

*Barragan v. Honeywell Int'l, Inc.*,
  2025 WL 2383652 (D.N.J. Aug. 18, 2025) ............................................................3

*Becerra v. Bank of Am. Corp.*,
  No. 24-cv-00921 (W.D.N.C. Aug. 12, 2025) .........................................................6

*Buescher v. N. Am. Lighting, Inc.*,
  2025 WL 1927503 (C.D. Ill. June 30, 2025) .........................................................6

*Chagnon v. Truefort, Inc.*,
  772 F. Supp. 3d 198 (D. Mass. 2025) ....................................................................7

*Dimou v. Thermo Fisher Sci., Inc.*,
  2024 WL 4508450 (S.D. Cal. Sep. 19, 2024).........................................................6

*Dimou v. Thermo Fisher Sci. Inc.*,
  2025 WL 2611240 (S.D. Cal. Sep. 9, 2025)........................................................1, 5

*Drinkwater v. Metro. Life Ins. Co.*,
  846 F.2d 821 (1st Cir. 1988)..................................................................................7

*Edes v. Verizon Commc'ns, Inc.*,
  417 F.3d 133 (1st Cir. 2005)..................................................................................4

*Estay v. Ochsner Clinic Found.*,
  2025 WL 2644782 (E.D. La. Sep. 15, 2025).......................................................1, 5

*Hutchins v. HP, Inc.*,
  737 F. Supp. 3d 851 (N.D. Cal. 2024) ................................................................5, 6

*Hutchins v. HP, Inc.*,
  767 F. Supp. 3d 912 (N.D. Cal. 2025) ................................................................8, 9

*Madera v. Marsh USA, Inc.*,
  426 F.3d 56 (1st Cir. 2005)....................................................................................7

ii

*McManus v. Clorox Co.*,
   2025 WL 732087 (N.D. Cal. Mar. 3, 2025)..................................................................................6

*Mead Corp. v. Tilley*,
   490 U.S. 714 (1989)........................................................................................................................4

*Middleton v. Amentum Parent Holdings, LLC*,
   2025 WL 2229959 (D. Kan. Aug. 5, 2025) ................................................................................6

*Naylor v. BAE Sys., Inc.*,
   2024 WL 4112322 (E.D. Va. Sep. 5, 2024)...........................................................................3, 5

*Nykiel v. Smith & Nephew, Inc.*,
   2025 WL 2347549 (D. Mass. July 11, 2025)........................................................................5, 10

*Perez-Cruet v. Qualcomm Inc.*,
   2024 WL 2702207 (S.D. Cal. May 24, 2024)......................................................................5, 6

*Rodriguez v. Intuit Inc.*,
   744 F. Supp. 3d 935 (N.D. Cal. 2024) .......................................................................................6

*Sievert v. Knight-Swift Transp. Holdings, Inc.*,
   780 F. Supp. 3d 870 (D. Ariz. 2025) ..........................................................................................6

*Stewart v. NextEra Energy, Inc.*,
   No. 23-cv-81314 (S.D. Fla. Aug. 14, 2025) .............................................................................3

*Tracey v. M.I.T.*,
   2017 WL 4478239 (D. Mass. Oct. 4, 2017)............................................................................10

*Wright v. JPMorgan Chase & Co.*,
   2025 WL 1683642 (C.D. Cal. June 13, 2025) .........................................................................4

## Other Authorities

Fed. R. Civ. P. 12(b)(6)........................................................................................................................7

**INTRODUCTION**

Plaintiffs' Opposition cannot save their claims from dismissal.[1] The Opposition—and Plaintiffs' overall theory—suffers from severe and pervasive flaws that compel dismissal of the Complaint in its entirety. *First*, the plain language of the Plan confirms that FMCNA used forfeitures exactly as ERISA allows and the Plan requires; the Opposition—like the Complaint— inexplicably insists on reading out of existence Section 4.4(b)'s specific, mandatory directive that forfeitures "shall be used to reduce Company contributions." *Second*, the Opposition barely acknowledges, and has no answer for, the decades of regulatory guidance allowing forfeitures to be used exactly as Plaintiffs allege FMCNA used them here. *Third*, the Opposition fails to meaningfully engage with or attempt to distinguish the growing consensus of cases that have rejected this theory, including several decisions issued in the weeks since the Motion was filed.[2] Nor does the Opposition offer a basis to allow any of Plaintiffs' six specific claims to proceed. Beyond this, the Opposition makes several critical concessions, relies on a minority of forfeiture cases with readily distinguishable facts and shoddy reasoning, and largely fails to engage with the bases for dismissal set forth in the Motion. The Court should dismiss the Complaint with prejudice.

**ARGUMENT**

**I.    The Opposition Affirms That Plaintiffs' Overarching Theory Is Not Actionable**

**A.    Plaintiffs' Theory Is Premised On An Implausible Interpretation Of The Plan**

Two Plan provisions govern the use of forfeitures. Section 4.4(b) states that "any forfeitures . . . shall be used to reduce Company contributions otherwise payable, in accordance with Sections 4.1 and 4.2." Section 7.4 provides that forfeitures "will be used to reduce Company Matching

---

[1] Terms defined in the Motion to Dismiss ("Motion") have the same meanings herein.

[2] *See Armenta v. WillScot Mobile Mini Holdings Corp.*, 2025 WL 2645518 (D. Ariz. Sep. 15, 2025); *Estay v. Ochsner Clinic Found.*, 2025 WL 2644782 (E.D. La. Sep. 15, 2025); *Dimou v. Thermo Fisher Sci. Inc.*, 2025 WL 2611240 (S.D. Cal. Sep. 9, 2025) ("*Dimou II*").

1

Contributions under Section 4.1 and to offset administrative expenses of the Plan." These provisions make sense in tandem, and the *only* way for FMCNA to comply with both is to first use forfeitures to reduce matching contributions consistent with Section 4.4(b), and then, to the extent any remain, offset administrative expenses consistent with Section 7.4. *See* Mot. at 11-14.

Plaintiffs concede—as they must—that the Plan must be "read[] as a whole" to give effect to every provision. Opp'n at 9; Mot. at 11. They nonetheless urge the Court to simply ignore the mandatory language in Section 4.4(b) because—they presumably realize—giving that provision effect forecloses their claims. Plaintiffs first argue, at 2, that since Section 7.4 does not reference Section 4.4(b), it somehow undermines FMCNA's interpretation. But they provide no doctrine of interpretation to support that meritless contention. Moreover, both Sections 4.4(b) and 7.4 reference Section 4.1, demonstrating they are related and must be read together. Next, at 3, Plaintiffs argue that FMCNA's interpretation "prioritiz[es] the exception language in Section 4.4(b) over Section 7.4." But *there is no exception language in Section 4.4(b)*. To the contrary, Section 4.4(b) is *mandatory* and requires that forfeitures "shall" be used to reduce Company contributions. Finally, at 3, Plaintiffs contend that the Plan's SPD and Forms 5500 support their interpretation because they state, respectively, that "[f]orfeitures will be used to reduce Company matching contributions *or* offset administrative expenses," and "[f]orfeitures are used to reduce Company contributions *and/or* offset administrative expenses." (emphases added). But that language supports FMCNA's interpretation, not Plaintiffs'—the use of "or" in both statements contemplates situations where no forfeitures will be applied to offset administrative expenses.

Plaintiffs are also wrong to argue, at 3, that the only way to read Sections 4.4(b) and 7.4 in tandem is to limit Section 4.4(b) "to those instances where the Plan has defrayed all possible reasonable administrative expenses of Plan administration and there are still forfeitures available

2

to reduce Company contributions 'otherwise payable.'" Plaintiffs do not identify *any* provision of the Plan requiring that forfeitures be used to defray "all possible" administrative expenses, because none exists. Rather, Section 4.3 states administrative expenses "shall generally be deducted from and allocated against Participants' accounts" and is silent as to forfeitures.[3] Notably, Section 4.3 mirrors a plan provision in *Honeywell*, where the court emphasized that adopting this same theory would "override" the terms of the plan requiring "administrative costs [] to be borne by Plan participants." *Barragan v. Honeywell Int'l, Inc.*, 2025 WL 2383652, at *3 (D.N.J. Aug. 18, 2025).

Plaintiffs' attempt to distinguish the Plan's language from that in *Naylor v. BAE Systems, Inc.*, 2024 WL 4112322 (E.D. Va. Sep. 5, 2024), is not persuasive. The mere fact that the Plan is organized differently from the plan in *Naylor* does not render *Naylor*'s reasoning any less applicable. And, as discussed, the only plausible reading of the Plan—that gives effect to both Sections 4.4(b) and 7.4—is that forfeitures must be used to offset employer contributions and may only be used to pay administrative expenses to the extent forfeitures exceed employer contributions. Mot. at 11-14. That was the same circumstance as in *Naylor*, and the court properly rejected plaintiffs' theory as implausible. *Naylor*, 2024 WL 4112322, at *6.[4]

In short, Plaintiffs' interpretation of the Plan simply makes no sense. If, as Plaintiffs argue, the Plan requires FMCNA to use forfeitures to offset some or all administrative expenses, then FMCNA *could not comply with* Section 4.4(b), which requires that "*any* forfeitures . . . *shall be*

---

[3] Plaintiffs' contention that Section 4.3 "discretionarily permits the Plan Committee" to "defray[] the reasonable expenses of Plan administration" using forfeitures relies on an incomplete reading of Section 4.3 and ignores that administrative expenses are generally deducted from participant accounts. Opp'n at 13; Plan § 4.3.

[4] Plaintiffs' reliance on *Stewart v. NextEra Energy, Inc.*, No. 23-cv-81314 (S.D. Fla. Aug. 14, 2025), ECF No. 58, also does not support their implausible interpretation of the Plan. In *Stewart*, the parties agreed that, under the terms of the plan at issue, forfeitures could only be used to reduce contributions *after* "paying all Plan administrative expenses." *Stewart*, slip op. at 12-13. That is the exact opposite language as here.

3

used to reduce Company contributions."

> **B.**     **Plaintiffs' Opposition Barely Acknowledges The Well-Settled Regulatory Framework Permitting FMCNA's Use Of Forfeitures**

FMCNA explained in its Motion, at 7-9, that decades of settled law and regulatory guidance expressly permit the use of forfeitures to offset employer contributions. The Opposition (which dedicates only a single paragraph to the issue, at 14-15) does not dispute what the settled law says about forfeitures or the fact that numerous courts have relied on the same regulations in dismissing parallel claims as implausible. Nor do Plaintiffs offer any competing regulatory authority to suggest their claims might somehow be viable. Instead, Plaintiffs make the remarkable argument, at 15, that such authority is "irrelevant." But the Supreme Court has instructed courts adjudicating ERISA claims to "consider the views of the . . . IRS," one of two "agencies responsible for enforcing ERISA," because otherwise it "would be to embark upon a voyage without a compass." *Mead Corp. v. Tilley*, 490 U.S. 714, 726 (1989) (citation modified). And numerous courts have flatly rejected Plaintiffs' invitation to write off this longstanding guidance as "irrelevant." *See, e.g.*, *Wright v. JPMorgan Chase & Co.*, 2025 WL 1683642, at *5 (C.D. Cal. June 13, 2025) ("Because Plaintiff's theory of liability would contravene decades of federal regulations suggesting that using forfeitures to reduce employer contributions is entirely permissible, and would necessarily 'create benefits beyond what was promised in the Plan itself,' the Court concludes that Plaintiff has failed to state a claim under ERISA.").[5]

---

[5] The two cases Plaintiffs rely on to assert that such legislative and regulatory history is irrelevant are inapposite. Both cases stand only for the unremarkable and irrelevant proposition that Treasury Regulations "do not create substantive rights under ERISA." *Abraham v. Exxon Corp.*, 85 F.3d 1126, 1131 (5th Cir. 1996); *Edes v. Verizon Commc'ns, Inc.*, 417 F.3d 133, 144 (1st Cir. 2005) (same). But Defendants do not contend otherwise. Rather, Defendants' argument is simply that Treasury Regulations—particularly those that relate to the tax-qualification of ERISA-governed retirement plans—would not explicitly authorize a practice that violates ERISA. *See* Mot. at 7-9.

4

**C.     The Overwhelming Weight Of Authority Has Rejected Plaintiffs' Theory**

The Motion identified over a dozen cases dismissing similar claims, with several more issued since. *See* Mot. at 2 n.2; *Armenta*, 2025 WL 2645518; *Estay*, 2025 WL 2644782; *Dimou II*, 2025 WL 2611240. Plaintiffs largely ignore these cases, dismissing them as "non-binding authority outside of the First Circuit." Opp'n at 14 n.2. But each of these cases addressed the same fundamental flaws in Plaintiffs' theory and found (1) such claims are foreclosed by longstanding regulatory guidance and (2) ERISA does not compel plan sponsors to award additional benefits (through the payment of administrative expenses) beyond what participants were promised under the plan. Plaintiffs offer no basis to ignore the emerging consensus dismissing similar claims.[6]

Instead, they refer the Court to the small handful of cases that have allowed forfeiture-based claims to proceed past the motion to dismiss stage.[7] But those cases employed faulty (or non-existent) reasoning in allowing such claims to proceed. Indeed, the court in *Hutchins v. HP, Inc.*, 737 F. Supp. 3d 851 (N.D. Cal. 2024) ("*Hutchins I*"), criticized the reasoning in *Perez-Cruet v. Qualcomm Inc.*, 2024 WL 2702207 (S.D. Cal. May 24, 2024), as "conclusory" and found the opinion was "not . . . persuasive." 737 F. Supp. 3d at 862 n.1. Moreover, nearly all of the cases Plaintiffs rely on involved discretionary language that contrasts sharply with the mandatory terms

---

[6] The only decision Plaintiffs attempt to distinguish is *Naylor*, 2024 WL 4112322, primarily on the basis that the plan involved slightly different plan language. Opp'n at 9-10, 14 n.2. However, that distinction relies, again, on Plaintiffs' implausible reading of the Plan and, regardless, immaterial variations in plan language do not render the well-reasoned opinion in that case inapplicable. Plaintiffs also seek to distinguish *Nykiel v. Smith & Nephew, Inc.*, 2025 WL 2347549, at *5 (D. Mass. July 11, 2025), *R. & R. adopted*, 2025 WL 2347430 (D. Mass. Aug. 13, 2025), on various grounds, but FMCNA only relied on *Nykiel* to address the prohibited transaction claims (Claims IV-V), and Plaintiffs' purported distinctions bear on other issues that have nothing to do with those claims.

[7] Although Plaintiffs contend that "eight cases [] have rejected motions to dismiss in forfeiture cases," they only identify six. *See* Opp'n at 14 n.2. Moreover, despite criticizing FMCNA for citing only one forfeiture case from this District, they have identified none.

governing FMCNA's use of forfeitures to reduce company contributions.[8]

All the forfeiture cases Plaintiffs cite depend on the same flawed premise that using forfeitures to offset employer contributions somehow benefits the employer and deprives participants of a benefit.[9] But that premise, which the Opposition adopts, at 12-13, fundamentally misconstrues the nature of forfeitures and what it means to use forfeitures to offset company contributions. Forfeitures are amounts that a sponsoring employer previously contributed to the plan on behalf of employees who left the company before those contributions vested. When the company uses forfeitures to offset contributions, it simply reallocates those prior employer contributions to current participant accounts. In other words, *forfeitures provide benefits to participants*. *See Hutchins I*, 737 F. Supp. 3d at 866 ("forfeited amounts are . . . used to pay pension benefits to [p]lan participants"); *Sievert v. Knight-Swift Transp. Holdings, Inc.*, 780 F. Supp. 3d 870, 880 (D. Ariz. 2025); *Middleton v. Amentum Parent Holdings, LLC*, 2025 WL 2229959, at *16 (D. Kan. Aug. 5, 2025); *Dimou v. Thermo Fisher Sci., Inc.*, 2024 WL 4508450, at *10 (S.D. Cal. Sep. 19, 2024). And forfeitures are *still* employer contributions; they are simply shifted from earlier contributions on behalf of employees who left the company (and thus did not become entitled to them) to satisfy obligations to current participants. It does not "save" the company money; the company has, at all times, contributed amounts necessary to meet its obligations. Nor

---

[8] *See Becerra v. Bank of Am. Corp.*, No. 24-cv-00921 (W.D.N.C. Aug. 12, 2025), ECF No. 56, slip op. at 2 (plan granted "sole discretion" over allocating forfeitures); *Buescher v. N. Am. Lighting, Inc.*, 2025 WL 1927503, at *2 (C.D. Ill. June 30, 2025) (plan provided "discretionary authority and control" over allocating forfeitures); *McManus v. Clorox Co.*, 2025 WL 732087, at *1 (N.D. Cal. Mar. 3, 2025) ("*Clorox II*") (plan gave "discretion to choose between using forfeitures to reduce employer contributions or pay plan expenses" and did "not specify which allocation should take priority"); *Rodriguez v. Intuit Inc.*, 744 F. Supp. 3d 935, 941-42 (N.D. Cal. 2024) (plan provided "discretionary authority over the management of forfeitures"); *Qualcomm*, 2024 WL 2702207, at *2 ("[f]orfeitures shall be used at the discretion of the Company").

[9] *See Becerra*, slip op. at 6; *Buescher*, 2025 WL 1927503, at *12; *Clorox II*, 2025 WL 732087, at *3; *Rodriguez*, 744 F. Supp. 3d at 943-44; *Qualcomm*, 2024 WL 2702207, at *2.

does it harm participants, who receive every penny the plan promises—as Plaintiffs do not dispute.

## II. The Opposition Cannot Save Any Of Plaintiffs' Six Specific Claims

### A. Claim I Depends On A Facially Implausible Interpretation Of The Plan

Plaintiffs' interpretation of the Plan is implausible insofar as it reads out of existence the clear mandate in Section 4.4(b) that forfeitures must be used to offset employer matching contributions. *Supra* at 1-4. And Plaintiffs are wrong to argue, at 4, 9, that the Court cannot resolve this unambiguous issue of Plan interpretation at the Rule 12(b)(6) stage. *See Chagnon v. Truefort, Inc.*, 772 F. Supp. 3d 198, 209 (D. Mass. 2025) ("Interpretation of an unambiguous contract is a matter of law and may, therefore, be done at the motion to dismiss stage.").

Plaintiffs' misguided insistence that the Plan is ambiguous simply reinforces that they were obligated to exhaust administrative remedies for Claim I. Plaintiffs' theory, at 10-11, is that FMCNA "breached their fiduciary duties . . . by failing to comply with Plan language"—not that FMCNA somehow failed to comply with ERISA itself. Accordingly, Claim I is nothing more than "a contract-based claim in statutory garb," which Plaintiffs do not dispute requires administrative exhaustion.[10] *Drinkwater*, 846 F.2d at 826.[11]

### B. Plaintiffs' Claims For Breach Of The Duty Of Loyalty And Prudence (Claims II-III) Must Be Dismissed

#### 1. Plaintiffs Do Not Challenge Fiduciary Conduct

The Opposition does not dispute that the exercise of fiduciary discretion is a fundamental

---

[10] The Opposition, at 12, confirms that Claims II-III are also premised on Plaintiffs' implausible Plan interpretation. Moreover, Plaintiffs rely on case law addressing discretionary forfeiture language, which is only relevant *if* the Court adopts their interpretation. To the extent Claims II-III are premised on issues of Plan interpretation, Plaintiffs were required to exhaust administrative remedies for those claims. *Drinkwater v. Metro. Life Ins. Co.*, 846 F.2d 821, 826 (1st Cir. 1988).

[11] Plaintiffs argue, at n.1, that if their claim requires exhaustion, they should be excused for futility because FMCNA "ha[s] already interpreted the Plan" in litigation. But a litigation position does not demonstrate futility. *See, e.g.*, *Madera v. Marsh USA, Inc.*, 426 F.3d 56, 63 (1st Cir. 2005).

prerequisite to their claims for breach of the fiduciary duties of loyalty and prudence. And Plaintiffs impliedly acknowledge that no such discretion was exercised here. They expressly concede, at 8, that "[w]hen Defendants designed their 401(k) Plan . . . they were acting as settlors." Plaintiffs are left to argue only that "when the time came to exercise the discretion provided by Section 7.4 to determine how Plan forfeitures would be allocated between employer contributions and Plan administrative expenses, that was a fiduciary decision." *Id*. But this again relies on the false premise that FMCNA had discretion to use forfeitures under the circumstances to pay Plan administrative expenses. It did not; FMCNA was restricted by Section 4.4(b) to use forfeitures to reduce contributions. Only if forfeitures exceeded contributions would FMCNA have had the opportunity to exercise discretion. But that never happened (nor do Plaintiffs allege that it did), so FMCNA could not have engaged in any fiduciary conduct.

### 2. Plaintiffs' Breach Of Loyalty Claim Has No Basis In Law

Plaintiffs' breach of loyalty theory is that, instead of using forfeitures to provide benefits to participants, FMCNA should have used forfeitures to pay administrative expenses that, under Section 4.3, are charged to participant accounts. Then, having used the forfeited contributions for administrative expenses, FMCNA should have been required to make *additional* matching contributions for current participants. In this way, Plaintiffs would have FMCNA pay them an additional benefit; not only would they get their administrative expenses paid through forfeited matching contributions, but they would also get additional matching contributions on top of that. *See, e.g.*, *Hutchins v. HP, Inc.*, 767 F. Supp. 3d 912, 922 (N.D. Cal. 2025) ("*Hutchins II*") (rejecting plaintiff's theory because it amounts to "creat[ing] an additional benefit").

Accordingly, Plaintiffs are wrong to argue, at 13, that "[t]his case does not involve providing benefits to Plaintiffs and other Class Members, but only concerns defraying the reasonable expenses of Plan administration." In reality, forfeitures *are* used to provide benefits to

Plan participants in the form of matching contributions to their Plan accounts. And the use of forfeitures to offset employer matching contributions does not "cost" Plaintiffs anything other than the administrative expenses that they are already obligated to pay pursuant to Section 4.3. Ultimately, Plaintiffs are asking the Court to provide them an *additional* benefit in the form of reduced administrative expenses. But Plaintiffs do not identify any obligation under ERISA or the Plan requiring FMCNA to do so. Nor does ERISA's duty of loyalty require FMCNA to prioritize defraying administrative expenses over providing benefits to participants; rather, both uses of forfeitures are fully consistent with the duty of loyalty. *See Hutchins II*, 767 F. Supp. 3d at 921-22 ("an ERISA fiduciary's duty is to ensure that all participants have received the full benefit guaranteed to them" and "acting in the best interests" of participants does not require "maximizing pecuniary benefits" or "resolving every issue of interpretation in favor of plan beneficiaries" (citation modified)).

### 3. Plaintiffs' Breach Of The Duty Of Prudence Claim Fares No Better

Plaintiffs address their breach of fiduciary duty of prudence claim in a single paragraph, at 17, simply parroting the Complaint's conclusory allegations. They ask the Court to infer that FMCNA employed an imprudent process solely because FMCNA used forfeitures to offset employer contributions. But that is consistent with the Plan, decades of regulatory guidance, ERISA, and standard practice. *See* Mot. at 6-9, 11-14, 17-18. There is no basis to infer imprudence from Plaintiffs' threadbare allegations, and the Opposition offers none.

### C. The Opposition Does Not Meaningfully Contest That FMCNA's Use of Forfeitures Is Neither A "Transaction" Nor Is It Prohibited

Plaintiffs still have not identified any "transaction" within the meaning of ERISA's prohibited transaction provisions. Critically, they do not dispute that forfeitures remain in the Plan and are reallocated to other participants as employer contributions. Mot. at 19. Nor do they dispute

that courts have largely concluded that the use of forfeitures to offset employer contributions is *not* a prohibited transaction. *Id*. at 20 & n.8. Indeed, Plaintiffs do not even attempt to distinguish the only case from this District to address that question, which squarely held that "reallocating forfeitures in a plan to provide benefits to other employees through use as matching contributions are not prohibited transactions." *Nykiel*, 2025 WL 2347549, at *5.

Plaintiffs' reliance on *Tracey v. M.I.T.*, 2017 WL 4478239 (D. Mass. Oct. 4, 2017), does nothing to save their claim under Section 1106(a)(1)(D) that the use of forfeitures to offset employer contributions constitutes "self-dealing." For starters, the *Tracey* court *dismissed* the plaintiffs' prohibited transaction claims, finding the plaintiffs had failed to plausibly allege that the defendants "subjectively intended to benefit a party in interest." 2017 WL 4478239, at *3. In the court's view, the plaintiffs' allegations that the party in interest received a monetary benefit did not plausibly suggest the arrangement "was more than a coincidence or innocuous activity." *Id*. Further, *Tracey* involved payment to an external third-party, *not* an intra-plan transfer. *Id*. But even that was insufficient to state a plausible claim. *Id*.

### D.      Plaintiffs Concede Their Duty To Monitor Claim Is Purely Derivative

Plaintiffs concede, at 20, that their failure to monitor claim is "derivative of Plaintiffs' first five claims." The Court should dismiss that claim with the others.

### CONCLUSION

Because Plaintiffs have failed to state a claim upon which relief can be granted, FMCNA respectfully requests that the Court dismiss the Complaint. And because its defects cannot be cured through amendment, and Plaintiffs have not sought leave to amend, the dismissal should be with prejudice.

Respectfully submitted,

*/s/ Keri L. Engelman*

Keri L. Engelman, BBO No. 704360
Noah J. Kaufman, BBO No. 678968
Mathew J. McKenna, BBO No. 716473
**MORGAN, LEWIS & BOCKIUS LLP**
One Federal Street
Boston, MA  02110
Tel.: (617) 341-7700
keri.engelman@morganlewis.com
noah.kaufman@morganlewis.com
mathew.mckenna@morganlewis.com

*Counsel for Defendants*

11

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on October 14, 2025, the foregoing document was filed through the Court's ECF system and sent electronically to the registered participants as identified on the notice of electronic filing.

*/s/ Noah J. Kaufman*
Noah J. Kaufman