UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

———————————————————— )
MICHELLE HEET, MIKE BICKLE,          )
FRANK LUKETICH, AND,                 )
DAVID KITCHELL, INDIVIDUALLY, AND    )
AS REPRESENTATIVES OF A CLASS OF     )
PARTICIPANTS AND BENEFICIARIES       )
OF THE FRESENIUS MEDICAL CARE        )
NORTH AMERICA 401(K) SAVINGS PLAN,   )
                                     )
            Plaintiffs,              )
                                     )
        v.                           )          CIVIL ACTION
                                     )          No. 25-11644-WGY
NATIONAL MEDICAL CARE, INC.,         )
d/b/a FRESENIUS MEDICAL CARE NORTH   )
AMERICA; BOARD OF DIRECTORS OF       )
FRESENIUS MEDICAL CARE NORTH         )
AMERICA; AND FRESENIUS MEDICAL       )
CARE NORTH AMERICA ADMINISTRATIVE    )
COMMITTEE, a/k/a ADMINISTRATIVE      )
COMMITTEE OF 401(K) SAVINGS PLAN,    )
                                     )
            Defendants.              )
———————————————————— )


YOUNG, D.J.                                February 9, 2026

## MEMORANDUM AND ORDER

### I. INTRODUCTION

In this putative class action, the Plaintiffs, Michelle

Heet, Mike Bickle, Frank Luketich, and, David Kitchell,

individually, and as representatives of a Class of Participants

and Beneficiaries of the Fresenius Medical Care North America

401(k) Savings Plan, ("the Participants"), sue National Medical

Care, Inc., d/b/a Fresenius Medical Care North America, the
Board of Directors of Fresenius Medical Care North America ("the
Board"), and Fresenius Medical Care North America Administrative
Committee, also known as the Administrative Committee of 401(k)
Savings Plan ("the Administrative Committee")(the Defendants are
collectively referred to as "Fresenius"), for breach of their
fiduciary duties pursuant to §§ 409 and 502 of the Employee
Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§
1109 and 1132.  For the reasons set forth below, Fresenius's
motion to dismiss, ECF No. 13, is ALLOWED as to counts I, IV,
and V, DENIED as to counts II and III, and ALLOWED in part and
DENIED in part as to count VI.

## II.  BACKGROUND

### A.  Procedural History

Fresenius moves to dismiss the Complaint.  Defs.' Mot.
Dismiss, ECF No. 13.  The motion is fully briefed.  Mem. Law
Supp. Defs.' Mot. Dismiss ("Defs.' Mem."), ECF No. 14; Resp.
Opp'n Defs.' Mot. Dism. ("Pls.' Opp'n"), ECF No. 16; Reply Mem.
Supp. Defs.' Mot. Dismiss Compl. ("Reply"), ECF No. 17.[1]  The
Court held a hearing on January 5, 2026 and took the matter
under advisement.

---

[1] The parties submitted supplemental authority.  See ECF
Nos. 24, 28, 34, and 37.

### B.    Facts Alleged

The Plan Participants in this putative class action are participants in the Fresenius Medical Care North America 401(k) Savings Plan ("the Fresenius Plan" or "Plan"), Mem. Law Supp. Defs.' Mot. Dismiss, Ex. A, ECF No. 14-2, an ERISA retirement plan whose assets are held in trust pursuant to 29 U.S.C. § 1103(a), funded by participants and non-elective company contributions.  Compl. ¶¶ 41-42.[2]  Once deposited, all participant contributions and Fresenius contributions become assets of the Plan.  Id. ¶ 42.

Company matching contributions ("matching contributions") vest in employees over a period of the first five years of employment, 20% each year.  Plan, § 7.2(a).  If an employee ceases employment prior to vesting in matching contributions, the Fresenius Plan provides that the contributions are applied first to matching contributions otherwise payable.  Section 4.4 of the Plan provides:

> Contributions shall be held in the Trust Fund to
> be used in accordance with the provisions of the Plan
> in providing the benefits and defraying the reasonable

---

[2] A copy of the Fresenius Plan is not attached to the Complaint, but Fresenius supplied a copy of the Plan.  It is referenced in the Complaint, and therefore can be considered without converting the motion to dismiss to a motion for summary judgment.  See Garcia-Tatupu v. Bert Bell/Peter Rozelle NFL Player Ret. Plan, 249 F. Supp. 3d 570, 577 (D. Mass. 2017) (Woodlock, J.) (deeming ERISA Plan submitted by defendant to be a document referenced in, and central to, the complaint and considered as part of motion to dismiss).

> expenses of Plan administration, and neither such
> contributions nor any income therefrom shall be used
> for or diverted to purposes other than for the
> exclusive benefit of Participants, Inactive
> Participants, and former Participants and their
> beneficiaries under the Plan except as provided above,
> and except that **any forfeitures arising under Section
> 7.2 on account of a Termination of Service shall be
> used to reduce Company contributions otherwise
> payable, in accordance with Sections 4.1 and 4.2.**

Plan, § 4.4(b) (emphasis added).  Section 7.2 of the Plan sets
the conditions under which funds are vested.  See Plan § 7.2.
Section 7.4 provides that "[a]ny amount forfeited . . . will be
used to reduce Company Matching Contributions . . . **and** to
offset administrative expense of the Plan."  Plan, § 7.4
(emphasis added).

The Plan Participants allege that Fresenius has applied
matching contribution forfeitures from 2019 through 2024 **only** to
reduce matching contributions while applying none to the
administrative expenses of the Plan.  Compl. ¶¶ 54–66. They
allege that, while theoretically there may be circumstances
where it would be prudent to pay down matching contributions
with forfeited matching contributions -- such as where there is
a risk that Fresenius could not cover its matching obligations -
- there is no evidence of this scenario present for purposes of
this action.  Id. ¶ 73.

[4]

### III. **ANALYSIS**

As will be explained below, ERISA plans that have matching contribution forfeiture provisions have seen litigation surrounding their application of forfeited matching contribution funds to their matching contribution obligations as opposed to paying administrative expenses.  There are two schools of thought here.  On the one hand, fiduciaries typically argue that they are not required to maximize benefits, only to ensure that the benefits due plan participants are appropriately disbursed. Accordingly, the reallocation of forfeited benefits to other matching contributions due as opposed to paying off administrative expenses is appropriate.  On the other hand, plan participants typically argue that fiduciaries are conflicted when presented with a choice about using forfeited contributions to pay down matching contributions due from the company and thereby benefit the coffers of the company, as opposed to paying down administrative expenses to plan beneficiaries.

Indeed, the allocation choice is a zero-sum game: using chargeable forfeited matching contributions to defray other contributions due from the company obviously benefits the company, while administrative expense defrayment benefits the plan participants.  As one court recently put it: on this "novel interpretation of ERISA on which there is no binding authority. . . [r]easonable minds can differ, and several district courts

do." McManus v. Clorox Co., No. 4:23-CV-05325-YGR, 2025 WL 732087, at *1 (N.D. Cal. Mar. 3, 2025). There is no controlling authority in the First Circuit. Turning to persuasive authority, no Circuit Court of Appeals has yet ruled on the issue.

The majority of district courts that have addressed the issue approve the fiduciary offsetting new matching contributions with forfeited matching contributions, while a minority of courts have let such claims survive at the motion to dismiss stage. Here, this Court follows persuasive authority adopting the minority position.

The Fresenius Plan provides no discretion as to the disbursement prioritization of forfeited matching contributions. Forfeited matching contributions must be paid to otherwise payable matching contributions in the first instance, and thereafter any carryover can be paid to reduce plan expenses. Merely following the Plan document, however, does not insulate a fiduciary from ERISA liability, and the Plan Participants, at least at the motion to dismiss stage, have stated a claim for breach of fiduciary duty and loyalty. The prohibited transaction claim is meritless, and the failure to monitor claim survives only to the extent counts II and III survive. Accordingly, the motion to dismiss is ALLOWED in part and DENIED in part.

[6]

### A.    Legal Standard on Motion to Dismiss

"To assess whether a complaint can withstand a Rule 12(b)(6) motion, [the Court] 'must accept as true all well-pleaded facts indulging all reasonable inferences in [the moving party's] favor.'" Lavigne v. Great Salt Bay Community Sch. Bd., 146 F.4th 115, 123 (1st Cir. 2025) (quoting Fantini v. Salem State Coll., 557 F.3d 22, 26 (1st Cir. 2009). Although relatively forgiving, the "federal pleading standard 'requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

### B.    Count I - Fresenius Failure to Follow the Plan Claim

"An ERISA fiduciary is . . . obligated to follow the terms of the plan, so long as they do not conflict with the [ERISA] statute." Sellers v. Trs. of Coll., 647 F. Supp. 3d 14, 23 (D. Mass. 2022) (citing 29 U.S.C. § 1104(a)(1)(D))[3]; see Erban v.

---

[3] Section 1104 (a)(1) provides:

(a) Prudent man standard of care

(1) Subject to sections 1103(c) and (d), 1342, and 1344 of this title, **a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and**--
(A) **for the exclusive purpose of:**
(i) **providing benefits to participants and their beneficiaries; and**
(ii) **defraying reasonable expenses of administering the plan;**

*Tufts Med. Ctr. Physicians Org., Inc.*, 652 F. Supp. 3d 149, 158 (D. Mass. 2023) (Saris, J.) (quoting 29 U.S.C. § 1104(a)(1)(D)). "[I]t is long-settled that 'provisions of an ERISA-regulated employee benefit plan must be interpreted under principles of federal common law.'" *Parmenter* v. *Prudential Ins. Co. of Am.*, 93 F.4th 13, 21 (1st Cir. 2024) (quoting *Ministeri* v. *Reliance Standard Life Ins. Co.*, 42 F.4th 14, 22 (1st Cir. 2022)). The First Circuit holds that "the federal common law 'embodies commonsense principles of contract interpretation' such as giving effect to the language's 'plain, ordinary, and natural meaning.'" *Id.* (quoting *Ministeri*, 42 F.4th at 22). Indeed, "[c]ourts construe ERISA plans, as they do other contracts, by 'looking to the terms of the plan' as well as to 'other manifestations of the parties' intent.'" *US Airways, Inc.* v. *McCutchen*, 569 U.S. 88, 102 (2013) (quoting *Firestone Tire & Rubber Co.* v. *Bruch*, 489 U.S. 101, 113 (1989)).

---

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;
(C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and
(D) **in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III.**

29 U.S.C.A. § 1104 (emphasis added)

"Whether a contract term is ambiguous is a question of law for the judge, the determination of which includes consideration of the entire contract." Parmenter, 93 F.4th at 22 (cleaned up). If a contract is ambiguous, resolution of that ambiguity goes to the factfinder. Id. at 23. Indeed, "[w]hen the court has only pleadings before it, it has declined to resolve ambiguous contract language on review of a granted motion to dismiss." Id. at 24 (citing Sonoiki v. Harv. Univ., 37 F.4th 691, 711 (1st Cir. 2022)).

The Court rules that the Fresenius Plan, read as a whole, is unambiguous. The Fresenius Plan requires forfeited matching contributions to be used to offset other matching contributions under Section 4.4(b) and, **once** those are paid, the **only other permissible,** albeit discretionary, use under the Fresenius Plan expands to defrayment of administrative expenses, under Section 7.4. See Comp. Naylor v. BAE Sys., Inc., No. 1:24-CV-00536 (AJT/WEF), 2024 WL 4112322, at *6-7 (E.D. Va. Sept. 5, 2024).[4]

---

[4] The Plan Participants cite to cases such as Stewart v. Nextera Energy, Inc., 23-81314-CIV-CANNON, 2025 WL 3098085 (S.D. Fla. Aug. 14, 2025), an unreported decision out of the Southern District of Florida. In Stewart, the forfeited amounts were required under the plan document to first restore previously forfeited amounts, then plan administrative expenses, and finally to company contributions. Id. at *6. The dispute was whether per-participant record-keeping fees were administrative expenses -- an undefined term that was subject to competing definitions. Id. *6-7. The analysis there is entirely different and does not inform the Court's analysis here.

The well pleaded allegations of the Complaint, though claiming a different interpretation of the Plan, do not present a complete picture of the Fresenius Plan. The factual allegations are consistent with the Court's interpretation of the Fresenius Plan's requirements. Accordingly, the motion to dismiss as to count I for breach of fiduciary duty for failing to follow the Plan is ALLOWED.

Compliance with the Fresenius Plan is not dispositive to the other claims. See Moitoso v. FMR LLC, 451 F. Supp. 3d 189, 205 (D. Mass. 2020) (ERISA's statutorily imposed fiduciary duty of prudence "trumps the instructions of a plan document" (quoting Fifth Third Bancorp v. Dudenhoeffer, 573 U.S. 409, 421 (2014))). Accordingly, while count I is dismissed, that does not require the dismissal of the remaining counts. See Buescher v. N. Am. Lighting, Inc., 791 F. Supp. 3d 873, 895 (C.D. Ill. 2025) (allowing motion to dismiss on failure to follow plan but denying motion to dismiss on ERISA loyalty and prudence claims).

## C.   Count II (Duty of Loyalty) and Count III (Duty of Prudence)

"ERISA imposes on plan fiduciaries duties of loyalty and prudence." Daggett v. Waters Corp., 731 F. Supp. 3d 121, 133 (D. Mass. 2024) (Dein, M.J.) (citing 29 U.S.C. § 1104(a)(1)(A)- (B)). "The duty of loyalty requires a fiduciary to act solely in the interest of plan participants and beneficiaries, and with

[10]

the exclusive purpose of providing them benefits." <u>Moitoso</u>, 451
F. Supp. 3d at 204 (citing 29 U.S.C. § 1104(a)). "[T]he duty of
prudence requires that a fiduciary act 'with the care, skill,
prudence, and diligence under the circumstances then prevailing
that a prudent man acting in a like capacity and familiar with
such matters would use in the conduct of an enterprise of a like
character and with like aims.'" <u>Sellers</u>, 647 F. Supp. 3d at 23
(quoting 29 U.S.C. § 1104(a)(1)(B)). At the motion to dismiss
stage, claims under either duty are viewed through the totality
of the circumstances pleaded in the complaint. <u>Sellers</u>, 647 F.
Supp. 3d at 24; <u>Moitoso</u>, 451 F. Supp. 3d at 204. "A claim for
breach of a fiduciary duty under ERISA includes proving a
breach, a loss, and the causal connection between the two."
<u>Parmenter</u>, 93 F.4th at 19 (citing <u>Brotherston</u> v. <u>Putnam Invs.,</u>
<u>LLC</u>, 907 F.3d 17, 30 (1st Cir. 2018) <u>and</u> 29 U.S.C. § 1109).[5]

---

[5]  The Court rejects Fresenius' argument of having acted in
a settlor capacity.  "Fiduciary duties 'consist of such actions
as the administration of the plan's assets,'" <u>Nykiel</u> v. <u>Smith &</u>
<u>Nephew, Inc.</u>, No. CV 24-12247-NMG, 2025 WL 2347549, at *5 (D.
Mass. July 11, 2025) (quoting <u>Hutchins</u> v. <u>HP Inc.</u>, 737 F.Supp.3d
851, 867 (N.D. Cal. 2024), <u>report and recommendation adopted</u>,
No. CV 24-12247-NMG, 2025 WL 2347430 (D. Mass. Aug. 13, 2025),
and the Plan Participants here "challenge the Defendants'
decisions how to apply forfeitures after they have been paid to
the Plan and become Plan assets," <u>id.</u> (citation omitted).
Accordingly, the Court rules that the Plan Participants have
alleged sufficiently that Fresenius has acted as a fiduciary.

Fresenius argues that these counts "rely on the false premise that using forfeitures to reduce employer contributions somehow creates a windfall for [Fresenius]." Defs.' Mem. 18. They argue that forfeitures are benefits Fresenius has already contributed to the Plan, and that there are no facts pleaded plausibly that it is disloyal or imprudent for a fiduciary to follow the Plan and "decades of legal guidance." Id. This view is supported by the majority of persuasive authority -- all district court cases -- with Hutchins v. HP Inc., 737 F. Supp. 3d 851, 862-864 (N.D. Cal. 2024) (Hutchins I) and Hutchins v. HP Inc., 767 F. Supp. 3d 912, 924-927 (N.D. Cal. 2025) (Hutchins II), now pending before the Ninth Circuit being the seminal cases supporting their position. See also, Estay v. Ochsner Clinic Found., No. CV 25-507, 2025 WL 2644782, at *2 (E.D. La. Sept. 15, 2025); Armenta v. WillScot Mobile Mini Holdings Corp., No. CV-25-00407-PHX-MTL, 2025 WL 2645518, at *4 (D. Ariz. Sept. 15, 2025); Middleton v. Amentum Parent Holdings, LLC, No. 23-CV-2456-EFM-BGS, 2025 WL 2229959, at *15 (D. Kan. Aug. 5, 2025); Cain v. Siemens Corp., No. CV 24-8730, 2025 WL 2172684, at *5 (D.N.J. July 31, 2025); Barragan v. Honeywell Int'l Inc., No. 24CV4529 (EP) (JRA), 2025 WL 2383652, at *4 (D.N.J. Aug. 18, 2025); Dimou v. Thermo Fisher Sci. Inc., No. 23-CV-1732 TWR (JLB), 2024 WL 4508450, at *9 (S.D. Cal. Sept. 19, 2024) (leave to amend); Naylor v. BAE Sys., Inc., No. 1:24-CV-00536

[12]

(AJT/WEF), 2024 WL 4112322, at *6 (E.D. Va. Sept. 5, 2024);

Sievert v. Knight-Swift Transportation Holdings, Inc., 780 F.

Supp. 3d 870, 878-79 (D. Ariz. 2025); and Wright v. JPMorgan

Chase & Co, No. 2:25-CV-00525-JLS-JC, 2025 WL 1683642, at *5

(C.D. Cal. June 13, 2025).

Boiled down to its simplest terms, these courts have ruled:

"(1) ERISA does not require the fiduciary to maximize profits,

only to ensure that participants receive their promised

benefits; (2) both ERISA and the terms of the plans themselves

authorize the use of forfeiture funds for employer contribution

matching; and (3) the plaintiffs' theory would effectively

require forfeiture funds to be used for administrative expenses

and would create an additional benefit to participants not

contemplated in the plans." Estay, 2025 WL 2644782, at *3.  In

addition, the Department of Labor has taken the position before

the Ninth Circuit in Hutchins "that it is not a breach of

fiduciary duty to use forfeitures to offset employer

contributions because participants receive their promised

benefits under the plan." Estay, 2025 WL 2644782, at *3.

The Plan Participants see it differently, of course,

arguing that **automatically** offsetting the company contributions

in the circumstances of this case unfairly benefits Fresenius's

coffers because those funds **could** have been applied to defray

plan expenses, and Fresenius would have had to pay company

[13]

contributions out of its own pocket anyway. Pls.' Opp'n 12-17.
They view this as a conflict that breached both duties of
loyalty, and prudence by failing to determine whether an
alternative was more appropriate. Id. The Plan Participants
cite persuasively to McManus, 2025 WL 732087, at *4 and
Buescher, 791 F. Supp. 3d at 890-891.

As to both duty of loyalty and duty of prudence claim, in
McManus, the court responded to Hutchins-based reasoning, first
agreeing that while "there is no duty to maximize pecuniary
benefits, the [duty of loyalty] does require fiduciaries to act
'solely in the interest of the participants and beneficiaries.'"
McManus, 2025 WL 732087, at *4 (quoting 29 U.S.C. § 1104(a)(1)).
Second, while an over-broad claim that requires a fiduciary to
exercise discretion under a plan to **always** defer to reduction of
plan expenses under the original complaint was not a plausibly
pleaded claim, the Court ruled that the plaintiff's amended
allegations were "sufficiently context-specific to survive a
motion to dismiss." Id., at *5. Those allegations were that
the fiduciaries, "by choosing how to allocate forfeited money in
the Plan, made the imprudent decision of using the money to
offset [the company's] contributions instead of saving plan
participants the cost of administrative fees." Id. Although
the McManus court noted certain sparsity of these allegations,
it nevertheless denied the motion to dismiss. Id.

[14]

Similarly, in Buescher, the court distinguished the
sufficiency of particularized pleadings in McManus against the
background of over-broad allegations in Hutchins I which
warranted a dismissal, observing that the plaintiff, in his
complaint, "allow[ed] for the possibility that an offset of
employer contributions may sometimes also be to the ultimate
benefit of participants and beneficiaries, . . . [and] alleges
that that was not the case [t]here, as there was no risk [t]here
that [the company] would not be able to meet its matching
contributions obligations." Buescher, 791 F. Supp. 3d at 890.
The court zeroed in on the fact that "[w]hile Defendants [made]
a great deal of arguments in their briefs, they never actually
contest[ed] this point. That is, there is no argument that the
Administrative Committee **was** acting in the interests of
participants and beneficiaries, or that its decisions comported
with the" duty of loyalty under ERISA. Id. at 890.

As for the duty of prudence, the court reviewed the
allegations of the lack of investigation:

> Plaintiff alleges that the Administrative
> Committee, in deciding how to allocate forfeitures,
> "utilized an imprudent and flawed process." He
> alleges that, despite the obvious conflict of interest
> presented by this decision, the Administrative
> Committee "failed to undertake any investigation into
> which option was in the best interest of the Plan's
> participants and beneficiaries." By way of example,
> Plaintiff alleges that the Administrative Committee
> did not "investigate whether there was a risk that NAL
> would default on its matching or discretionary

[15]

contribution obligations if forfeitures were used to
pay Plan expenses, or evaluate whether there were
sufficient forfeitures to eliminate the Plan expenses
charged to participants and still offset a portion of
NAL's own contribution obligations, as a prudent
person would have done." He similarly alleges that
Defendants "failed to consult with an independent non-
conflicted decisionmaker to advise them in deciding
upon the best course of action for allocating the
forfeitures in the Plan, as a prudent person would
have done." Ultimately, Plaintiff accuses Defendants
of "reflexively cho[osing] to use the forfeitures for
their own interest, to the detriment of the Plan and
its participants."

Id. at 891. The court rejected arguments that these allegations

were speculative, that some forfeitures were allocated toward

plan expenses during certain years, were insulated by compliance

with the plan documents, or that the theory of imprudence

described would require assuming the payment of employer

contributions to be per se imprudent. Id. at 892-93.

So it is here. In the absence of binding authority, the

Court must honor the allegations of the complaint at the motion

to dismiss stage, drawing all reasonable inferences in favor of

the Plan Participants. The allegations of the complaint here

comport with McManus and Buescher.

First, the complaint makes sufficient allegations

concerning the duty of loyalty and prudence claims. For

example, unlike in Hutchins I and Hutchins II, there are

sufficient allegations cabining the breadth of the claims.

Contrast 737 F. Supp. 3d at 862 and 767 F. Supp. 3d at 923, 926-

27 <u>with</u> Compl. ¶ 73 ("Although it is possible that reducing employer contributions may be in the best interests of participants where there is a risk that Fresenius may be financially unable to satisfy its matching contribution obligations, there is no evidence that Fresenius had such financial inability."), ¶ 74 ("Absent a risk that Fresenius would be unable to satisfy its contribution obligations under the Plan, however, using forfeitures to 'pay plan administrative expenses' would always be in the participants' best interest because that option would reduce or eliminate amounts otherwise charged to their accounts to cover such expenses."), ¶ 75 ("In deciding between using the forfeiture to benefit Fresenius or using the forfeitures to benefit the participants, Defendants are presented with a conflict of interest in administering the Plan and managing and disposing of its assets."), ¶ 76 ("While Defendants' decisions to use the Plan's forfeitures to offset or reduce its matching contributions benefitted Fresenius by lowering its costs, it harmed the Plan, along with its participants and beneficiaries, by reducing the amount of assets the Plan otherwise would have received and by causing deductions from participants' accounts to cover expenses that otherwise would have been covered in whole or in part by Plan forfeitures.").

Second, the Complaint contains sufficient allegations concerning lack of investigation to survive a prudence claim. See Id. ¶ 81 ("Defendants failed to undertake any prudent investigation into which option was the most prudent action to take."), ¶ 82 ("Defendants did not . . . for example, investigate whether there was a risk that Fresenius would default on its Plan matching contributions if forfeitures were used to pay Plan administrative expenses, or evaluate whether there were sufficient forfeitures to eliminate the Plan administrative expenses charged to participants and still offset a portion of Fresenius' own contribution obligations, as a prudent person would have done."); ¶ 83 ("Defendants also failed to consult with independent non-conflicted decisionmakers to advise them in deciding upon the best course of action for allocating the forfeitures in the Plan, as a prudent person would have done."), ¶ 84 ("Defendants have consistently and reflexively chosen to use the forfeitures for their own interest, to the detriment of the Plan and its participants, by allocating all forfeitures toward offsetting and reducing Fresenius' matching contributions owing to the Plan.").[6]

---

[6] "To determine whether an ERISA fiduciary has breached the duty of prudence, courts consider 'both the substantive reasonableness of the fiduciary's actions and the procedures by which the fiduciary made its decision,' focusing on 'whether the fiduciary employed proper methods to investigate and evaluate decisions regarding the plan and its assets.'" Ellis v. Fid.

Notably, unlike in, e.g., Hutchins I, Barragan, or Cain, the Plan Participants do not advance the theory that "would impose categorical liability anytime a company chose to use forfeitures to reduce its own contributions" regardless of the circumstances.  Cain, 2025 WL 2172684, at *5 (citing Hutchins I, 737 F. Supp. 3d at 862).  By pleading this way, they avoid creating tension with the Supreme Court decision in Fifth Third Bancorp v. Dudenhoeffer, 134 S. Ct. 2459 (2014), which states that "[b]ecause the content of the duty of prudence turns on the 'circumstances . . . prevailing' at the time the fiduciary acts, § 1104(a)(1)(B), the appropriate inquiry will necessarily be context specific."

The complaint therefore plausibly pleads claims for breach of the ERISA duties of loyalty and prudence.  The motion to dismiss is therefore DENIED as to counts II and III.

### D.    Count IV and Count V -- Prohibited Transactions

"ERISA bars a fiduciary from causing a plan to engage in prohibited transactions, which include providing services or transferring assets between the fiduciary and the plan."

---

Mgmt. Tr. Co., 257 F. Supp. 3d 117, 128–29 (D. Mass. 2017) (first quoting Fish v. GreatBanc Tr. Co., 749 F.3d 671, 680 (7th Cir. 2014), and then quoting Glass Dimensions, Inc., ex rel. Glass Dimensions, Inc. Profit Sharing Plan & Tr. v. State St. Bank & Tr. Co., 931 F.Supp.2d 296, 305 (D. Mass. 2013) (Tauro, J.)), aff'd, 883 F.3d 1 (1st Cir. 2018).

[19]

<u>Moitoso</u>, 451 F. Supp. 3d at 205 (citing 29 U.S.C. § 1106(b)). ERISA also prohibits a fiduciary from "engag[ing] in a transaction, if he knows or should know that such transaction constitutes a direct or indirect -- . . . transfer to, or use by or for the benefit of a party in interest, of any assets of the plan." 29 U.S.C.A. § 1106(a)(1)(D). This Court rules that unlike services or real estate, for example, as pleaded here, "reallocating forfeitures in a plan to provide benefits to other employees through use as matching contributions are not prohibited transactions." See <u>Nykiel</u> v. <u>Smith & Nephew, Inc.</u>, No. CV 24-12247-NMG, 2025 WL 2347549, at *5 (D. Mass. July 11, 2025) (Boal, M.J.), <u>report and recommendation adopted</u>, No. CV 24-12247-NMG, 2025 WL 2347430 (D. Mass. Aug. 13, 2025) (Gorton, J.)

**E.  Count VI -- Failure Adequately to Monitor Other Fiduciaries.**

The failure to monitor claims are dependent upon the other claims and therefore survive only to the extent that counts II and III, survive. See <u>Buescher</u>, 791 F. Supp. 3d at 898. Accordingly, the motion to dismiss is ALLOWED in part and DENIED in part as to count VI.

**IV.  CONCLUSION**

For the aforementioned reasons, the motion to dismiss, ECF No. 13, is ALLOWED as to counts I, IV, and V, DENIED as to

counts II and III, and ALLOWED in part and DENIED in part as to count VI.

**SO ORDERED.**

*William G. Young*

WILLIAM G. YOUNG
JUDGE
of the
UNITED STATES[7]

_____

[7] This is how my predecessor, Peleg Sprague (D. Mass 1841-1865), would sign official documents. Now that I'm a Senior District Judge I adopt this format in honor of all the judicial colleagues, state and federal, with whom I have had the privilege to serve over the past 47 years.