**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

MICHELLE HEET, DAVID KITCHELL, MIKE BICKLE, and FRANK LUKETICH, individually, and as Representatives of a Class of Participants and Beneficiaries of the Fresenius Medical Care North America 401(k) Savings Plan,

Plaintiffs,

v.

NATIONAL MEDICAL CARE, INC. d/b/a FRESENIUS MEDICAL CARE NORTH AMERICA and FRESENIUS MEDICAL CARE NORTH AMERICA ADMINISTRATIVE COMMITTEE,

Defendants.

Civil Action No. 1:25-cv-11644-WGY

---

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

---

## INTRODUCTION

Plaintiffs Michelle Heet, David Kitchell, Mike Bickle, and Frank Luketich seek preliminary approval of a $740,000 settlement resolving this ERISA class action concerning the use of forfeitures in the Fresenius Medical Care North America 401(k) Savings Plan. The proposed Settlement provides a funded recovery without the expense, delay, and risk of completing discovery, expert proceedings, class certification, trial, and appeal. Defendants deny liability. Plaintiffs seek an opportunity to present the Settlement to the Class and obtain a final fairness determination after notice and a hearing.

The Settlement should be evaluated against the claims that remain after this Court's February 9, 2026 ruling. The Court construed the Plan to require forfeitures first to reduce otherwise payable matching contributions, while holding that compliance with the Plan did not dispose of Plaintiffs' statutory loyalty and prudence claims. *Heet v. National Medical Care, Inc.*, 819 F. Supp. 3d 63 (D. Mass. 2026), ECF No. 38 at 9–10, 16–19. Plaintiffs obtained an opportunity to develop those claims, not a determination of liability or damages. The negotiated recovery accounts for the cost and uncertainty of proving a deficient fiduciary process, causation, and loss.

Plaintiffs' proposed Exhibit D would allocate the Net Settlement Amount in proportion to eligible general Plan administrative expenses actually charged to individual accounts during the Class Period. The method connects payment to the injury asserted: participants allegedly paid expenses that available forfeitures could have covered. No claim form is required. Eligible Class Members with Active Accounts receive payments to their Plan accounts; those without Active Accounts receive checks. Class Representatives receive ordinary allocations under the same formula. The Court retains control over fees, expenses, any Case Contribution Awards, and material changes to allocation.

Plaintiffs request the threshold findings required by Rule 23(e)(1)(B), settlement-only certification under Rule 23(b)(1), appointment of Class Representatives and Class Counsel, preliminary approval of Exhibit D, approval of conformed notices, and a schedule for final review. The relief sought does not ask the Court to determine the merits, approve a fee award now, or treat preliminary approval as final acceptance of every requested deduction.

Plaintiffs also submit the signed declarations of Michelle Heet ("Heet Decl."), David Kitchell ("Kitchell Decl."), Mike Bickle ("Bickle Decl."), and Frank Luketich ("Luketich Decl."). Those declarations describe each representative's participation in the litigation and support for preliminary approval, notice, and a fairness hearing. Heet Decl. ¶¶ 4, 11; Kitchell Decl. ¶¶ 4, 11; Bickle Decl. ¶¶ 4, 11; Luketich Decl. ¶¶ 4, 11.

## BACKGROUND

### I. Pleadings and the Court's Ruling

Plaintiffs filed the Complaint on June 6, 2025. ECF No. 1; Settlement Agreement, Article 1 (definition of Complaint). They challenged the use of forfeited employer contributions to reduce employer contribution obligations rather than to offset Plan administrative expenses. Defendants moved to dismiss, ECF No. 13, and the Court heard argument on January 5, 2026. On February 9, 2026, the Court allowed dismissal of Counts I, IV, and V, denied dismissal of Counts II and III, and allowed in part and denied in part dismissal of Count VI. *Heet*, 819 F. Supp. 3d at 65, 73.

The Court held that Sections 4.4(b) and 7.4 of the Plan, read together, prioritize the matching contribution offset and permit residual forfeitures to defray administrative expenses. ECF No. 38 at 9–10. The Court nevertheless held that Plaintiffs plausibly alleged breaches of loyalty and prudence based on the challenged fiduciary decision-making process. Id. at 16–19. The monitoring claim survived insofar as it related to those underlying claims. Id. at 20. The proposed

settlement resolves the Action without changing that construction or conceding either side's merits position.

## II. Investigation and Settlement Negotiations

Class Counsel investigated the Plan documents, publicly filed Plan information, participant information, and materials exchanged in connection with settlement evaluation. The parties submitted the dispute to prominent JAMS Mediator Robert A. Meyer, Esq., and mediated on September 17, 2026. They then developed the detailed agreement and exhibits presented for approval. Secunda Decl. ¶¶ 15–18. Counsel's evaluation is based on the available record; Plaintiffs do not represent that merits discovery has been completed.

## III. Principal Settlement Terms

The proposed agreement identifies National Medical Care, Inc. d/b/a Fresenius Medical Care North America and the Fresenius Medical Care North America Administrative Committee as Defendants. Capitalized terms have the meanings assigned in the Settlement Agreement. The proposed Settlement Class is:

> All persons who participated in the Plan at any time during the Class Period, including any Beneficiary of a deceased Person who participated in the Plan at any time during the Class Period, and any Alternate Payee of a Person subject to a QDRO who participated in the Plan at any time during the Class Period.

The Class Period runs from June 6, 2019 through the date of the Preliminary Approval Order. Settlement Agreement, art. 1. The Complaint alleged almost 73,000 members of the proposed litigation class. Compl. ¶ 88. The recordkeeper's data will establish the number of unique members of the Settlement Class. Secunda Decl. ¶ 4.

The Gross Settlement Amount is $740,000. Under Article 4, the fund is established within ten business days after preliminary approval, and the transferor deposits the money within thirty calendar days after the later of preliminary approval or satisfaction of the specified fund-

establishment and payment-information conditions. The Net Settlement Amount includes fund earnings, less approved fees and costs, Case Contribution Awards, Administrative Expenses, and a contingency reserve whose cap the parties will agree upon. An expense may be deducted only once. Unused reserves become available for distribution. If the Settlement terminates, Section 12.2 requires that all funds deposited into the Qualified Settlement Fund, and any interest earned thereon, be returned to Defendants within thirty calendar days. Settlement Agreement, arts. 1, 4, 5, 12. Secunda Decl. ¶¶ 5–6, 10.

Exhibit D defines Eligible Expenses as general Plan administrative charges actually imposed on a Class Member's account, reduced by related refunds and credits. Each allocation equals the Net Settlement Amount multiplied by the member's Eligible Expenses and divided by aggregate Eligible Expenses. Members with no Eligible Expenses receive no allocation. Missing data may not automatically be treated as zero. Exhibit D §§ 1–4.

The administrator reconciles records and proposed payments, corrects errors, and accounts for rounding. It may not substitute account balances or participation periods for actual charges, or introduce a payment threshold, without Court approval and any required further notice. Active Account status is determined when Final Entitlement Amounts are calculated; an account closing before payment is paid by check. Checks remain valid for 180 days, with address research, reissuance, and reasonable reminders. After reasonable recovery efforts, unclaimed amounts go to the Plan trust for Plan administrative expenses. Exhibit D §§ 3–7.

Articles 1 and 7 release claims through the date of the Final Order involving forfeitures, Plan expenses and services, and administration relating to expenses or forfeitures. The release also addresses unknown claims and allocation matters. Section 14.5 disclaims responsibility and liability of the Settling Parties and counsel for the administrative, fiduciary-review, fund-

management, allocation, payment, and tax matters identified there; Section 14.6 separately addresses the Released Parties' responsibility for the Plan of Allocation. Sections 14.9 and 14.11 govern enforcement and retained jurisdiction. Exhibit D separately directs the Settlement Administrator to reconcile data and correct material calculation and payment errors. Secunda Decl. ¶ 11.

The maximum fee request is one-third of the $740,000 fund ($246,666.67), plus reimbursement of litigation costs. Plaintiffs propose a maximum Case Contribution Award request of $7,500 for each of four representatives ($30,000 total). Class Counsel will seek any such awards by separate application. The Court retains discretion over each award. Settlement Agreement, arts. 1, 6. Secunda Decl. ¶ 6.

Defendants will retain an Independent Fiduciary to review the settlement of Plan claims under PTE 2003-39. The proposed agreement calls for a written determination at least 28 calendar days before the Fairness Hearing. Settlement Agreement §§ 2.1, 11.4. Secunda Decl. ¶ 14.

## ARGUMENT

### I. The Current Rule 23 Standard Supports Preliminary Review and Notice

Rule 23(e)(1)(B) requires information sufficient to show that the Court will likely be able to approve the proposal under Rule 23(e)(2) and certify the class for purposes of judgment. Final approval requires a fair, reasonable, and adequate settlement after consideration of adequate representation, arm's-length negotiations, adequacy of relief, and equitable treatment among Class Members. The inquiry includes litigation risks and delay, distribution effectiveness, proposed fees and payment timing, and agreements identified under Rule 23(e)(3). Plaintiffs address those matters below rather than rely solely on a presumption favoring settlement.

The two-stage review described in *Hochstadt v. Boston Scientific Corp.*, 708 F. Supp. 2d 95, 106–07 (D. Mass. 2010), provides useful context, applied together with the present rule. Preliminary review permits notice and a hearing; it does not replace the final inquiry. Because notice has not issued, the Class's reaction is unknown. Plaintiffs make no inference of approval from the absence of objections at this stage.

## II. The Settlement Warrants Preliminary Approval Under Rule 23(e)(2)

### A. Plaintiffs and Counsel Have Represented the Class Adequately

Plaintiffs challenge common decisions affecting the Plan's use of forfeitures and seek restoration of losses to the Plan under ERISA §§ 409 and 502(a)(2). Their interest in obtaining an enforceable recovery aligns with participants who allegedly bore administrative charges. The Complaint describes each representative's Plan participation and alleged account injury. Compl. ¶¶ 21–25. Differences in account status and amount of expenses are addressed by a uniform allocation formula.

In declarations executed on October 29 and 30, 2026, each representative attests to understanding the duties owed to the Class and being unaware of any conflict with Class Members. Heet Decl. ¶ 3; Kitchell Decl. ¶ 3; Bickle Decl. ¶ 3; Luketich Decl. ¶ 3. Each describes reviewing the allegations, supplying information and documents to counsel, reviewing the then-proposed Settlement Agreement, and communicating with counsel about mediation and negotiations. Heet Decl. ¶¶ 4–5; Kitchell Decl. ¶¶ 4–5; Bickle Decl. ¶¶ 4–5; Luketich Decl. ¶¶ 4–5. These specific activities support a finding that the representatives participated in evaluating and pursuing the Class's claims.

Class Counsel's investigation, briefing, review of the Court's ruling, financial analysis, and settlement work support informed representation. Paul M. Secunda's experience includes

substantial ERISA class action practice, eighteen years teaching workplace and employee benefits law, and service on the ERISA Advisory Council. Secunda Decl. ¶¶ 19–23. Jonathan M. Feigenbaum also has significant ERISA experience over a decades-long career. Plaintiffs seek appointment of Walcheske & Luzi, LLC as Class Counsel under Rule 23(g), as provided in the agreement. Jonathan M. Feigenbaum also represents Plaintiffs.

Each representative receives an ordinary class allocation under the same formula as other members. Any service award depends on the Court's review of the representative's work. Under proposed § 7.7, FMCNA would pay $500 outside the class fund to each representative who individually signs the optional general release and does not timely revoke it. All four have indicated that they intend to sign after reviewing the final terms. The decision to sign has no effect on class payments or eligibility for a Case Contribution Award. Secunda Decl. ¶ 12. The form of individual release is submitted as Exhibit 2 to the Secunda Declaration. It provides for payment within fifteen business days after the later of expiration of the individual Revocation Period or FMCNA's receipt of the firm's W-9, by electronic funds transfer to Walcheske & Luzi for distribution to the signing representative.

The representatives also acknowledge the distinction between the class release and the optional personal general release, and understand that the separate $500 payment does not change their ordinary class allocation. Heet Decl. ¶¶ 9–10; Kitchell Decl. ¶¶ 9–10; Bickle Decl. ¶¶ 9–10; Luketich Decl. ¶¶ 9–10. Their declarations explain that continued litigation could produce more, less, or no recovery, and express support for preliminary approval. Heet Decl. ¶¶ 5, 11; Kitchell Decl. ¶¶ 5, 11; Bickle Decl. ¶¶ 5, 11; Luketich Decl. ¶¶ 5, 11. This evidence supports informed representation while allowing the Court to evaluate the consideration for the individual releases separately.

### B. The Negotiations Were Conducted At Arm's Length

The parties litigated a contested motion to dismiss and negotiated with the assistance of Robert A. Meyer. They disputed the consequences of the Plan's contribution-first provisions and the fiduciary treatment of remaining forfeitures. The Settlement reflects a compromise between adversaries with different views of liability and loss. Secunda Decl. ¶¶ 15–18. Mediation supports the arm's-length character of the result, while the Court independently evaluates the substantive terms. Plaintiffs disclose the optional release arrangement under § 7.7 and the form of individual release submitted as Exhibit 2 to the Secunda Declaration under Rule 23(e)(3). Any executed elections or additional related agreements will be disclosed as part of the approval process. Secunda Decl. ¶ 25.

### C. The Recovery Reflects the Costs, Risks, and Delay Of Further Litigation

The Court's construction of the Plan posed a significant issue for Plaintiffs' damages theory. Although the statutory fiduciary claims survived, Plaintiffs still faced disputes concerning the effect of the Plan-required contribution offset, the fiduciary process governing forfeitures, causation, and loss. ECF No. 38 at 9–10, 16–19. Those questions would have called for transaction-level evidence and expert analysis.

Potential remaining disputes included whether reported balances include uncashed checks attributable to particular participants, when employer contribution reductions were posted, when additional forfeitures entered the account, what expenses could have been paid, and whether a prudent fiduciary could have maintained a reserve. A year-end balance alone does not answer each of those questions. Defendants also contested causation and lost earnings. Even a merits victory would not have necessarily yielded Plaintiffs' preferred loss calculation.

In any case, Plaintiffs would have borne the expense and delay of further discovery, expert work, class certification, dispositive motions, trial, and potential appeal. The Court's February ruling did not resolve those stages in their favor. Against those risks, the Settlement provides $740,000 under a defined funding obligation. Counsel considers the compromise reasonable based on the available record. Secunda Decl. ¶¶ 5, 13, 16–18.

The agreement does not require a prospective change in forfeiture policy. Plaintiffs therefore attribute no negotiated monetary value to an unpromised plan amendment or future reduction in expenses. The settlement value presented to the Court is the cash fund and the agreed distribution protections. This approach allows the Court and Class Members to evaluate the actual exchange.

**D. The Distribution Method is Effective and Treats Class Members Equitably**

Exhibit D uses the administrative expenses each member actually paid as a practical measure of the alleged economic burden. A participant who bore more qualifying charges receives a larger share; a participant who bore none receives no payment. The approach avoids a claim process that could reduce participation through missed forms or incomplete submissions.

The formula does not purport to adjudicate each person's full damages, assign a separate right to forfeited contributions, or guarantee reimbursement of every charge. It distributes a compromise fund using a common measure linked to the pleaded injury. The same measure applies to current and former account holders and to the representatives. Beneficiary and QDRO provisions prevent double counting and preserve the aggregate entitlement. Exhibit D §§ 1, 2, and 5. A fair allocation should track relevant differences in the asserted injury. See Hochstadt, 708 F. Supp. 2d at 109–10.

The safeguards matter because actual expense records may be incomplete. The administrator must reconcile duplicates, credits, and material omissions, seek corrected records, and bring unresolved material issues to the Court. Missing records are not zero charges. If the denominator cannot reliably be calculated, the administrator must obtain Court direction. Neither an easier proxy nor a new minimum payment can be introduced without approval. Counsel will obtain confirmation of data availability, feasible implementation, and estimated cost before seeking entry of the operative notice order. Secunda Decl. ¶¶ 8–10, 24.

Residual payments to the Plan trust for administrative expenses maintain the connection to the asserted injury and prevent reversion to Defendants after consummation. That provision does not guarantee each Class Member will receive the same individual benefit from residual funds. The administrator must first make the address, reminder, correction, and reissuance efforts specified in Exhibit D, and provide an accounting. Exhibit D §§ 6–7.

### E. Fees, Expenses, And Representative Payments Remain Subject To Review

Class Counsel proposes to file its fee and cost application at least 42 calendar days before the Fairness Hearing, unless the Court orders otherwise. The application will describe counsel's work, provide supporting fee evidence, and itemize litigation costs. With objections due 14 days before the hearing, class members would have at least 28 days to evaluate the application before objecting. Settlement Agreement §§ 2.2.7, 6.2.

Fees, costs, administration, Independent Fiduciary expenses, any contribution awards, and reserves reduce the distribution fund. Counsel will supply the available budgets and identify the amount and purpose of the contingency reserve. Expenses may not be deducted twice under Exhibit D. Article 12 provides that denial or reduction of fees or contribution awards does not itself constitute disapproval of the Settlement.

The representatives' descriptions of their work provide an evidentiary basis for considering their contributions in connection with any later Case Contribution Award application. Heet Decl. ¶ 4; Kitchell Decl. ¶ 4; Bickle Decl. ¶ 4; Luketich Decl. ¶ 4. Each expressly acknowledges that such awards reduce the amount available for distribution, are not guaranteed, and will be considered separately by the Court. Heet Decl. ¶ 6; Kitchell Decl. ¶ 6; Bickle Decl. ¶ 6; Luketich Decl. ¶ 6. Plaintiffs do not ask the Court to determine an individual award amount at preliminary approval.

### F. The Release and Independent Fiduciary Review Require Full Disclosure

The proposed release includes expense and service-related claims, which are intrinsically linked to the surviving forfeiture counts, and extends to acts through the Final Order.

The proposed schedule places the Independent Fiduciary's written determination 14 days before the objection deadline. The fiduciary will consider objections received before its determination and receive any later timely objections. If a later objection materially affects its determination, the fiduciary will supplement its report before the hearing. The Court separately evaluates the settlement under Rule 23. Settlement Agreement § 2.1.5. Secunda Decl. ¶ 14.

## III. THE SETTLEMENT CLASS SATISFIES RULES 23(A), 23(B)(1), AND 23(G)

A settlement-only class must satisfy the applicable certification requirements. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620, 625–27 (1997). The settlement context does not relax adequate representation or excuse conflicts. Here, the request rests on a common challenge to fiduciary administration and Plan relief, subject to confirmation of class size, representative injury, and the conflict questions identified above.

### A. Numerosity and Commonality

The Complaint alleged almost 73,000 members of the proposed litigation class. Compl. ¶ 88. Although the final Settlement Class count depends on Plan records for the full Class Period, the pleaded estimate supports the conclusion that individual joinder would be impracticable. Secunda Decl. ¶ 4.

Common questions include what process governed the challenged use of forfeitures, whether the challenged conduct satisfied loyalty and prudence, whether any failure to monitor contributed to a breach, and whether the Plan sustained loss. Evidence of the Plan's terms, Committee decisions, forfeiture accounting, and general administrative expenses supplies common answers. Differences in each member's charge total affect the allocation calculation; they do not eliminate the shared questions about the underlying process.

### B. Typicality and Adequacy

The representatives allege the same type of injury as the Class: account expenses that they contend could have been defrayed through a loyal and prudent use of Plan forfeitures. Their claims arise from the challenged course of conduct and seek the same kind of Plan relief. Compl. ¶¶ 21–25. Their declarations confirm that all four participated in the Plan during the Class Period. Kitchell retained his Plan account when the Complaint was filed; Heet, Bickle, and Luketich had rolled their accounts out of the Plan. Heet Decl. ¶ 2; Kitchell Decl. ¶ 2; Bickle Decl. ¶ 2; Luketich Decl. ¶ 2. Their differing account statuses are addressed through the common allocation formula. The declarations also substantiate their participation and acknowledgment of duties to the Class. Heet Decl. ¶¶ 3–4; Kitchell Decl. ¶¶ 3–4; Bickle Decl. ¶¶ 3–4; Luketich Decl. ¶¶ 3–4.

The contemplated Case Contribution Awards and optional individual releases are disclosed for the Court's review. Any contribution awards require separate Court approval; an individual

release election does not affect the representative's class allocation or eligibility to request an award. The common recovery interest, uniform allocation rule, and experienced counsel support a finding of adequate representation. Settlement Agreement §§ 6.1, 7.7; Secunda Decl. ¶¶ 6, 12, 19–23.

### C. Certification is Appropriate Under Rule 23(b)(1)(B)

Plaintiffs invoke ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), to recover losses under § 409, 29 U.S.C. § 1109, on behalf of the Plan. The challenged use of forfeitures involves a common Plan asset pool and a fiduciary process applied to that pool. Separate judgments addressing the same conduct and restorative recovery could, as a practical matter, determine or impair absent participants' interests in the Plan's recovery and disposition of those assets. This supports Rule 23(b)(1)(B). *See Hochstadt*, 708 F. Supp. 2d at 104–06.

The request is not based merely on the possibility of different damages judgments or the label "ERISA." It concerns the practical effect of adjudicating a common fiduciary administration claim and Plan recovery in separate proceedings. Although Rule 23(b)(1)(A) may also apply where judgments would impose incompatible fiduciary obligations, Plaintiffs principally rely on subsection (B). The proposed class would be mandatory, with no opt-out right; robust notice, conflict review, and a meaningful opportunity to object therefore are essential.

### D. Walcheske & Luzi, LLC Should Be Appointed Class Counsel

Rule 23(g) directs attention to counsel's investigation, experience, knowledge of the applicable law, and resources committed to representation. Counsel's work on the claims and settlement, together with the experience described in the Secunda Declaration, supports appointment. Secunda Decl. ¶¶ 15–24. Class Counsel will continue to oversee notice, allocation, final approval, and implementation.

## IV. THE COURT SHOULD APPROVE NOTICE AND SET A COORDINATED SCHEDULE

Rule 23(e)(1) requires notice in a reasonable manner to all members who would be bound. For a Rule 23(b)(1) class, Rule 23(c)(2)(A) also authorizes appropriate notice. Individual short-form notice by available email or first-class mail, supplemented by a dedicated website containing the long-form notice and settlement documents, provides direct access to the proposal. Article 1 and Article 2 require address updates and reasonable efforts to resend returned notices. Exhibit D separately supplies distribution-stage address research and reissuance protections.

The proposed notices should describe the mandatory class, the $740,000 gross fund, deductions, the proposed allocation based on Eligible Expenses, the class release, and the procedures for objecting and appearing at the hearing. Before dissemination, Class Counsel will coordinate with Defendants and Analytics to conform the notices to the approved agreement and allocation plan, disclose the fee and award requests, and insert the hearing date, objection deadline, and website address.

Plaintiffs request a hearing date at least 120 calendar days after entry of preliminary approval, as proposed in Exhibit C. That date would also satisfy the agreement's minimum interval measured from filing the motion. Under the proposed schedule, the fee application would be due 42 days before the hearing, the fiduciary determination 28 days before, objections and the final approval motion 14 days before, and responses to objections seven days before. Exhibit C proposes class-data delivery within twenty calendar days after preliminary approval and individual notice within forty calendar days after preliminary approval. The proposed twenty-day data deadline is earlier than the agreement's thirty-business-day production provision and gives Analytics time to prepare notice.

Defendants undertake to serve CAFA notice within ten calendar days after the preliminary-approval filing. Settlement Agreement, Article 2; Exhibit F. Final approval may not issue until at least ninety days after the later of the required service on the appropriate federal and state officials. 28 U.S.C. § 1715(d). Exhibit F must be completed with the required materials and information.

The Court should also review any proposed restraint on parallel proceedings for a defined scope and lawful basis. The operative order must preserve authorized regulatory communications, settlement enforcement, and applicable law. Plaintiffs request only relief the Court determines is appropriate to protect the settlement proceedings; they do not rely on boilerplate injunction language to enlarge the substantive release.

## CONCLUSION

Plaintiffs respectfully request that the Court grant preliminary approval, certify the Settlement Class for settlement purposes under Rule 23(b)(1), appoint Class Representatives and Class Counsel, preliminarily approve Exhibit D, approve the completed notice materials and manner of dissemination, and set a Fairness Hearing and related deadlines. Final approval, fees, expenses, contribution awards, and any other relief requiring final review remain subject to the Court's independent determination after notice and an opportunity to object.

Dated: November 20, 2026

Respectfully submitted,

**WALCHESKE & LUZI, LLC**

*s/ Paul M. Secunda*
Paul M. Secunda (admitted pro hac vice)
1200 N. Mayfair Road, Suite 270
Wauwatosa, Wisconsin 53266
Telephone: (414) 828-2372
Fax: (262) 565-6469
E-Mail: psecunda@walcheskeluzi.com

**JONATHAN M. FEIGENBAUM, ESQ.**

Jonathan M. Feigenbaum (BBO No. 546686)
184 High Street, Suite 503
Boston, Massachusetts 02110
Telephone: (617) 357-9700
E-Mail: jonathan@erisaattorneys.com
Attorneys for Plaintiffs and the Proposed Settlement Class

## CERTIFICATE OF SERVICE

I hereby certify that on November 20, 2026, I caused a copy of the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*s/ Paul M. Secunda*
Paul M. Secunda